Case 1:21-cv-03028-ACE    ECF No. 26    filed 03/17/23    PageID.716    Page 1 of 13

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WHISPER C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY, <br><br> Defendant. | No. 1:21-CV-03028-ACE <br><br> ORDER GRANTING <br> PLAINTIFF'S MOTION <br> FOR SUMMARY JUDGMENT <br><br> ECF Nos. 18, 22 |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 18, 22. Attorney Chad Hatfield represents Whisper C. (Plaintiff); Special Assistant United States Attorney Ryan Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** the matter for further proceedings.

## JURISDICTION

On April 15, 2013, Plaintiff was found to be disabled as of March 7, 2013. Tr. 65-72. On July 7, 2016, the Commissioner conducted a continuing disability review and determined that Plaintiff, then thirteen years old, was no longer disabled and therefore no longer eligible for Supplemental Security Income. Tr.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

73, 75-78.  Plaintiff's request for reconsideration of that determination was denied.  Tr. 97-106.  ALJ Prinsloo held a hearing on June 4, 2020, and issued an unfavorable decision on June 24, 2020.  Tr. 20-33.  The Appeals Council denied review on December 29, 2020.  Tr. 1-6.  Plaintiff appealed this final decision of the Commissioner on February 24, 2021.  ECF No. 1.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

//

## SEQUENTIAL EVALUATION PROCESS

A child is "disabled" for the purposes of receiving Supplemental Security Income benefits if she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Act requires the Commissioner to review a disabled child's continued eligibility for benefits at least once every three years. *See* 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). The Commissioner has established a three-step medical improvement sequential evaluation process for determining whether a child continues to be disabled within the meaning of the Act. 20 C.F.R. § 416.994a(b).

At step one, the inquiry is whether there has been medical improvement in the impairments that were present at the time of the most recent favorable determination or decision finding the child disabled (the most recent favorable determination is called the "comparison point decision" or "CPD," and the impairments that were present at the CPD are called the "CPD impairments"). 20 C.F.R. § 416.994a(b)(1); SSR 05-03p. Medical improvement is any decrease in medical severity, except for minor changes. 20 C.F.R. § 416.994a(c). It must be based on changes in the symptoms, signs, or laboratory findings associated with the impairments. 20 C.F.R. § 416.994a(c). If there has been no medical improvement, the child is still disabled, unless one of the exceptions to medical improvement applies. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the inquiry proceeds to step two.

At step two, the inquiry is whether the CPD impairments still meet or medically or functionally equal the severity of the listed impairments that they met or equaled at the time of the CPD. *See* 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. The question at step two is whether a claimant's CPD impairments still functionally equal the listings. *See* 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. If

the impairments still functionally equal the listings, the child is still disabled, unless one of the exceptions to medical improvement applies. 20 C.F.R. § 416.994a(b)(2). If they do not, the inquiry proceeds to step three. 20 C.F.R. § 416.994a(b)(2).

At step three, the inquiry is whether the child is currently disabled considering all current impairments, including those the child did not have at the time of the CPD and those that the Commissioner did not consider at that time. 20 C.F.R. § 416.994a(b)(3). This first involves determining whether the child's new or unconsidered impairments are "severe" – meaning more than slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. § 416.994a(b)(3)(i); 20 C.F.R. § 416.924(c). If the impairments are not severe, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(i). If they are severe, the question is whether they meet or medically equal the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *See* 20 C.F.R. § 416.994a(b)(3)(ii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(ii). If not, the question is whether they functionally equal the listings. 20 C.F.R. § 416.994a(b)(3)(iii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(iii). If not, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(iii).

Determining whether a child's impairments functionally equal the listings requires an assessment of the child's limitations in six broad areas of functioning, called "domains." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) "Acquiring and Using Information," (2) "Attending and Completing Tasks," (3) "Interacting and Relating with Others," (4) "Moving About and Manipulating Objects," (5) "Caring for Yourself," and (6) "Health and Physical Well-being." 20 C.F.R. § 416.926a(b)(1)(i-vi). In making this assessment, the factfinder must compare how appropriately, effectively, and independently the impaired child performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

The child's impairment or combination of impairments will be found to functionally equal the listings if the child has "marked" limitations in at least two of the domains or if the child has "extreme" limitations in any one of the six domains.  20 C.F.R. § 416.926a(d).

## ADMINISTRATIVE FINDINGS

The ALJ determined that Plaintiff had medically improved and was no longer under a disability as of July 7, 2016.  Tr. 33.

With respect to Plaintiff's condition at the time of the CPD, the ALJ made the following findings:

The CPD was April 15, 2013.  At that time, Plaintiff had the following medically determinable impairments: attention deficit hyperactive disorder (ADHD) and mood disorder.  These impairments resulted in the following limitations: marked limitations attending/completing tasks, interacting with others, and caring for self.  Because Plaintiff's impairments resulted in these limitations, her impairments were found to functionally equal the listings.  Tr. 24.

With respect to the three-step medical improvement review standard, the ALJ made the following findings.

At step one, the ALJ found that there had been medical improvement in the impairments that were present at the time of the CPD (citing 20 C.F.R. § 416.994a(c)).  Tr. 24.

At step two, the ALJ found that Plaintiff's CPD impairments no longer functionally equaled the severity of the listed impairments (citing 20 C.F.R. § 416.994a(b)(2); 20 C.F.R. § 416.926a; SSR 05-03p).  Tr. 25.

At step three, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD) and depression.  The ALJ found that Plaintiff's impairments neither meet/medically equals one of the listed impairments nor functionally equal the listings.  Tr. 25 (citing 20 C.F.R. § 416.925; 20 C.F.R. § 416.926; 20 C.F.R. § 416.924(d); 20 C.F.R. § 416.926a). Specifically,

the ALJ found Plaintiff has "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, interacting with others, caring for yourself, and no limitations in moving about and manipulating objects and health and physical well-being.  Tr. 29-33.

Because Plaintiff has not had an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, the ALJ found Plaintiff's disability ended as of July 7, 2016.  Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision and, if so, whether that decision is based on proper legal standards.

Plaintiff raises the following issues for review: (A) whether the ALJ properly evaluated the medical opinion evidence; and (B) whether the ALJ properly evaluated the symptom allegation testimony.  ECF No. 15 at 2.

## DISCUSSION

**A.    Medical Opinions**

Because Plaintiff filed her application before March 27, 2017, the ALJ was required to generally give a treating doctor's opinion greater weight than an examining doctor's opinion, and an examining doctor's opinion greater weight than a non-examining doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  An ALJ may only reject the contradicted opinion of a treating or examining doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  An ALJ may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). Plaintiff argues the ALJ misevaluated three medical opinions.  ECF No. 15 at 11-21.

//

### 1. *Nancy Winfrey, Ph.D*

Dr. Winfrey testified at the hearing as a medical expert. The ALJ indicated Dr. Winfrey "opined [Plaintiff] met listings of 112.04 and 112.15" for Plaintiff's PTSD and depression diagnoses and "had marked [limitations in] interaction and adaptation." The ALJ gave Dr. Winfrey's opinion "little weight." Tr. 27.

The ALJ first discounted Dr. Winfrey's opinion on the ground the doctor "seemed to base her opinion largely on the evidence that supported the original award of benefits for the CPD." Tr. 27. Substantial evidence does not support this finding. Dr. Winfrey plainly testified that she reviewed the longitudinal record, including "very helpful" treatment notes that "go right up pretty much to the present." Tr. 53. Further, Dr. Winfrey's Listings analysis fundamentally differed from that of the CPD, as it involved *different* impairments. Tr. 53-54; *compare* Tr. 52 (Dr. Winfrey opining that Plaintiff has "active PTSD symptoms" and "significant depression") *with* Tr. 66 (CPD stating ADHD is the sole impairment). Indeed, Dr. Winfrey testified "[Plaintiff's] issues aren't even primarily ADHD, and that's not even a diagnosis in her treatment notes for the last two years." Tr. 56-57. The ALJ accordingly erred by discounting the opinion on this ground. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record").

The ALJ next discounted Dr. Winfrey's opinion as "at odds with the better-supported DDS reconsideration opinion." Tr. 27. This reasoning is legally erroneous. An ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" the ALJ's conclusion. *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Further, it is not the job of the reviewing court to comb the administrative record to find specific conflicts. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Resisting this conclusion, the Commissioner avers the Court may nevertheless

"draw reasonable inferences." ECF No. 22 at 10. However, having reviewed the record, no reasonable inferences may be drawn from the ALJ's assessment of the DDS reconsideration opinion that would firmly explain the basis for the ALJ's rejection of Dr. Winfrey's opinion. The Court may only affirm an ALJ's decision based on the reasons actually given, "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The ALJ accordingly erred by discounting the opinion on this ground.

Finally, the ALJ discounted Dr. Winfrey's opinion on the ground the doctor "failed to adequately assess the impact of noncompliance with and sporadic treatment, inconsistent medication use, and drug and alcohol issues." Tr. 27. This finding is both conclusory and unsupported. The ALJ did not explain *how* Dr. Winfrey failed to conduct an "adequate[]" assessment or how this assessment undermines her opinion. *See Garrison*, 759 F.3d at 1012-13; *Burrell*, 775 F.3d at 1138. Moreover, Dr. Winfrey squarely addressed Plaintiff's drug and alcohol usage, treatment compliance, and medication usage. Dr. Winfrey testified that the "ongoing concern of substance use" "muddies the waters to some degree," pointing to Plaintiff's "alcohol and cannabis" usage. Tr. 53. Dr. Winfrey also spoke to Plaintiff's compliance with treatment, assessing her as "compliant" and pointing to "very few no-shows, if any actually."[1] Tr. 55. Finally, Dr. Winfrey noted Plaintiff had "issues" taking her ADHD medication, but assessed that issue "was resolved in the past two years." Tr. 56. The ALJ accordingly erred by discounting the opinion on this ground.

---

[1] In any event, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

The ALJ accordingly erred by discounting Dr. Winfrey's opinion.

### 2. *CeCilia Cooper, Ph.D*

Dr. Cooper examined Plaintiff on May 3, 2017, and opined, as relevant here: "[Plaintiff] has problems with depression and anxiety that result in strained relationships at home and a felt need, on her part, for more one on one assistance in school to facilitate learning. She appears to respond more favorably to that kind of help than to counseling or medication monitoring. She is seeking a transfer to an alternative school. She would probably be more comfortable in that type of setting because of the accommodations provided." Tr. 443.

The ALJ rejected Dr. Cooper's opinion regarding an alternative school, finding it "appears based on preference/subjective statements of the claimant rather than any necessity as the claimant has no IEP, has improvement in school, and the teacher questionnaire from that same year does not show such need." Tr. 28. The ALJ's finding lacks evidentiary support. As an initial matter, the teacher questionnaire indicates Plaintiff's involvement in at least three violent incidents, 93 total absences across her classes during the 2016-2017 school year,[2] and largely worsening academic performance. Tr. 265, 268. Moreover, the record indicates Dr. Cooper's opinion was based on clinical observations and does not indicate Dr. Cooper found Plaintiff to be untruthful. Therefore, this is no evidentiary basis for rejecting the opinion. *Cf. Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *Edlund v. Massanari*,

---

[2] Plaintiff's disciplinary history and attendance record stand in stark contrast to the ALJ's finding that her "school record shows no serious attendance problems and minimal social problems at school." Tr. 31. Indeed, the ALJ refers to these violent incidents as "minor disciplinary infractions[.]". Tr. 31.

253 F.3d 1152, 1159 (9th Cir. 2001). The ALJ accordingly erred by discounting Dr. Cooper's opinion.

### 3. *Kristylynne Goveia, LICSW*

Ms. Goveia was Plaintiff's treating counselor during much of the relevant time period. In addition to a bevy of treatment notes, the record contains an initial mental health assessment conducted by Ms. Goveia prior to the commencement of Plaintiff's counseling sessions. As part of the initial assessment, performed on May 8, 2018, Ms. Goveia opined on the following "medical necessity": "[Plaintiff] qualifies for SED due to an impairment in functioning in the family, at school and with social interactions. [Plaintiff] is experiencing impairment in school work and has failing grades for more than the last 6 months. … Treatment is deemed to be reasonably necessary to improve and stabilize the functional difficulties." Tr. 437.

Plaintiff argues the ALJ erred by failing to assess Ms. Goveia's opinion. The Commissioner counters that Ms. Goveia did not offer an opinion that speaks to functional limitations. Neither party is exactly right. As discussed below, the Court concludes the ALJ erred by failing to develop the record with respect to Ms. Goveia.

The Commissioner explains "SED" stands for "Severe Emotional Disturbance." ECF No. 15 at 17. While the Commissioner correctly observes that Plaintiff "has not offered any explanation of the term in her brief," ECF No. 15 at 17, the Court notes the term appears in the Individuals with Disabilities Education (IDEA) Act's implementing regulations. *See* 34 C.F.R. § 300.8(c)(4). There it is defined as "a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance: (A) An inability to learn that cannot be explained by intellectual, sensory, or health factors[;] (B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers[;] (C) Inappropriate types of behavior or feelings under normal circumstance[;] (D) A general pervasive

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

mood of unhappiness or depression[;] (E) A tendency to develop physical symptoms or fears associated with personal or school problems." 34 C.F.R. § 300.8(c)(4)(i). Although the term "SED" arises out of a different statutory scheme, it is evident the bases for an "SED" relate and are relevant to the "domains" of functioning. *Compare id. with* 20 C.F.R. § 416.926a(b)(1)(i-vi).

In light of Ms. Goveia's specific use of term that speaks to functional limitations and her ensuing treating relationship with Plaintiff, the ALJ should have contacted Ms. Goveia to obtain a more fulsome medical source statement, lest potentially significant and probative evidence from the only treating provider be excluded from the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (internal quotation marks and citations omitted). Contrary to the Commissioner's implicit assertion, *see* ECF No. 22 at 15, the Court cannot conclude that any error with respect to Ms. Goveia was harmless.

**B.      Symptom Allegation Testimony**

Plaintiff contends the ALJ erred by not properly assessing the symptom allegation testimony, as offered by Plaintiff's mother at the hearing. ECF No. 15 at 4-13. Where, as here, the ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The Court concludes the ALJ failed to offer clear and convincing reasons to discount the symptom allegation testimony.

The ALJ discounted the symptom allegation testimony as inconsistent with the medical evidence. Tr. 724-25. However, because the ALJ erred by discounting two medical opinions and failing to develop the record with respect to

Plaintiff's treating counselor, and necessarily failed to properly evaluate the medical evidence, as discussed above, this is not a valid ground to discount Plaintiff's testimony. The ALJ accordingly erred by discounting the symptom allegation testimony.

## SCOPE OF REMAND

This case must be remanded because the ALJ harmfully misevaluated the medical evidence and the symptom allegation testimony. Plaintiff contends the Court should remand for an immediate reinstatement of benefits. Such a remand should be granted only in a rare case and this is not such a case. Apart from developing the record with respect to Plaintiff's treating counselor, the medical opinions and the symptom allegation testimony must be reweighed and this is a function the Court cannot perform in the first instance on appeal. Further proceedings are thus not only helpful but necessary. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (noting a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances'") (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

On remand, the ALJ shall obtain an updated medical source statement from Ms. Goveia, reevaluate the medical opinion evidence and symptom allegation testimony, and reconsider the three-step sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further proceedings. Therefore, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED March 17, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE